IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| S.F., by his parents, : | |
| K.F. and E.I., : | |
| : | |
| Plaintiff, : | Civil Action No.: |
| : | |
| v. : | |
| : | |
| School District of Upper Dublin, : | |
| : | |
| Defendant. : | |

Plaintiff S.F., by his parents, K.F. and E.I., brings this action against Defendant School District of Upper Dublin and in support thereof alleges as follows:

## INTRODUCTION

1. Plaintiff S.F., a student with cerebral palsy who uses a power wheelchair for mobility and lives and attends school in the School District of Upper Dublin ("District"), brings this action against the District to redress violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134, and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, resulting from Defendant's failure to make its middle school program accessible to S.F.

2. Although the RA and ADA have required equal access to education programs for decades, Sandy Run Middle School, Defendant's only middle school facility, contains a number of substantial physical barriers making the District's middle school program inaccessible to S.F. A committee of the Upper Dublin Board of School Directors has emphasized that Sandy Run Middle School has "[s]ignificant ADA compliance issues" and that "the deficiencies in accessibility as identified through the Americans with Disabilities Act are extensive."

3. In order to make the District's middle school program, which serves students from sixth to eighth grades, accessible to S.F., Defendant would need to (a) make extensive renovations to the Sandy Run Middle School buildings; (b) relocate the middle school program to an accessible facility; or (c) build a new accessible facility to house the middle school program.

4. Plaintiff S.F. is currently attending fourth grade at Maple Glen Elementary School, the district's only accessible elementary school, where he is educated for more than half of the school day with typical students and where he has made meaningful friendships. S.F. intends to attend middle school in the District, where he and his family reside.

5.      Recognizing the fact that any of the available options to make the middle school program accessible to S.F. would take significant time to approve, plan and implement, S.F.'s parents and District officials began discussions to develop a plan for S.F. to access the middle school program in or about January 2016.  By way of example, S.F.'s parents toured Sandy Run Middle School with District officials, District officials created a list of physical barriers to Sandy Run Middle School, and plaintiff's father served on a school board committee focused on facilities issues at Sandy Run Middle School.

6.      After a preliminary list of barriers to accessibility was created, S.F.'s parents learned that any plans to renovate Sandy Run Middle School to make it accessible had been abandoned in favor of building a new middle school facility at the site of the current facility.  Upon information and belief, the new construction project has not been approved, financing has not been obtained, and no demolition work on the existing site has begun making a new middle school facility unlikely to be completed in time for S.F. to attend sixth grade.

7.      S.F.'s parents have continued to request that Defendant develop a plan to include S.F. in Defendant's middle school program, but Defendant has failed to do so.

8. Defendant has been in violation of federal law for several decades. The passage of additional time serves only to limit the Defendant's ability to provide S.F. with equal access to its middle school program when S.F. enters sixth grade.

9. S.F. is seeking a declaration that Defendant is in violation of the ADA and RA and injunctive relief compelling Defendant to provide S.F with equal access to its middle school program.

## **JURISDICTION**

10. This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331, which confers jurisdiction over civil actions arising under the law of the United States.

11. Plaintiff's claims for declaratory relief are authorized by 28 U.S.C. §§ 2201 and 2202.

12. Venue is appropriate in this district pursuant to 28 U.S.C. 1391(b)-(c) since Defendant operates and performs all of its official duties in this district and because all of the events that gave rise to this Complaint occurred in this district.

## PARTIES

13. Plaintiff S.F. is a resident of Ambler, Pennsylvania, which is served by the School District of Upper Dublin, and brings this action through his mother, K.F., and his father, E.I.

14. Defendant School District of Upper Dublin is an educational agency with its offices located at 1580 Fort Washington Avenue, Maple Glen, Pennsylvania. The District is responsible for providing educational services to students with disabilities who reside in the District.

## FACTUAL BACKGROUND

15. Plaintiff S.F. is a nine-year-old boy who attends the fourth grade. When he is not in school, he enjoys swimming, reading and riding his tricycle.

16. Plaintiff S.F. has cerebral palsy as a result of a birth injury. S.F. uses a power wheelchair for mobility and a computer for communication. S.F. requires assistance with all activities of daily living, including walking, feeding and toileting.

17. Plaintiff S.F. lives with his parents, K.F. and E.I., and sister in the District where he has lived since he was a baby.

18. S.F. currently attends his neighborhood school, Maple Glen Elementary School in the District, as he has since kindergarten. At Maple

Glen, S.F. delivers school "mail" and has, over the years, built friendships with other children that are important to him.

19.   S.F. receives special education services.  As required by his individualized education program, S.F. "participate[s] with non-disabled peers in the general education environment except when receiving direct replacement academic instruction, speech and language therapy, occupational therapy, physical therapy and adapted physical education." Although, notably, even S.F.'s adapted physical education curriculum includes typical students.  S.F. spends more than half of his school day in the regular education environment.

20.   In October 2015, K.F. and E.I. purchased a new home for their family in the District and have expended substantial resources to renovate their home to make it accessible to S.F.

21.   S.F. intends (and his parents intend for him) to attend middle school and high school in the District where he lives.  Plaintiff's mother attended school in the District.

22.   The middle school program in the District is located at Sandy Run Middle School.

23.   Sandy Run Middle School consists of two buildings, referred to as the "annex" (built in or about 1965) and the "main building" (built in or

about 1967). The sixth-grade specific academic classrooms are located in the annex. The lunchroom, main gymnasium and library are located in the main building.

24. Both of the Sandy Run Middle School buildings are inaccessible to people with disabilities who use wheelchairs, such as S.F. The physical barriers include, but are not limited to, the absence of adequate curb cuts, exterior and interior doorways that are too narrow, the absence of accessible bathroom facilities, the absence of automatic doors, inadequate ramps, and physical barriers to the library, physical education and lunch programs.

25. Elementary school field trips to the planetarium located at Sandy Run Middle School occur multiple times per school year despite the fact that there is no accessible bathroom facility for S.F. to use.

26. In January 2016, when S.F. was in second grade, K.F., Plaintiff's mother, contacted Dr. Ian Sandberg, the Defendant's then-Supervisor of Secondary Education, to request a meeting and a site visit of Sandy Run Middle School after learning that it remained inaccessible in order to inquire about how S.F. would be provided with access to the District's middle school program. Dr. Sandberg was aware of the

accessibility issues at Sandy Run Middle School as Plaintiff's mother had spoken to him earlier in the school year.

27. In or about March 2016 and May 2017, S.F.'s parents met with District officials and toured Sandy Run Middle School.

28. Shortly after the May 2017 meeting, Robert Lester, Defendant's Director of Facilities, sent a list of "ADA deficiencies that we discussed during our walk through of Sandy Run Middle School." Mr. Lester stated that he had "begun talking with Dr. [Deborah S.] Wheeler[, Superintendent of Schools] and [Business Administrator] Brenda Brae about these issues and the steps we need to take going forward."

29. The list of "ADA deficiencies" prepared by Mr. Lester included the following:

> **Annex**
>
> Entrance Vestibule
> The entrance vestibule doors do not provided [sic] the needed access for a wheelchair. Entrance doors with a 36" clearance need to be installed. Automatic door controls should be installed.
>
> Accessible Classroom
> There are no wheelchair accessible classrooms in the current layout of the Annex. A classroom will have to be relocated to an accessible room.
> Classroom Entrance
> The doorways to the classrooms are too narrow for wheelchair access. Entrance way [sic] to a classroom needs to be widened.

Restrooms
There are no wheelchair accessible restrooms in the Annex.  An accessible restroom will have to be built in the area of the classroom.

Exit to Breezeway
The Breezeway exit vestibule is not configured for wheelchair access.  The interior vestibule door will need to be removed. An automatic door control should be installed.

**Main Building**

Breezeway
The slope of the Breezeway ramp does not meet ADA requirements.

Breezeway Entrance
The Breezeway entrance door should have automatic door control.  This entrance leads to a hallway without ramp access.  Access to the upper level requires the student to pass through the gym to access a hallway with a ramp.  This presents several issues with doorway thresholds and class disruption.

Breezeway Entrance Alternate
There is an entrance to the ramp hallway from the teachers [sic] parking area.  The Breezeway path would need to be extended to this entrance. Automatic door controls would need to be added to this entrance.

> Cafeteria Location
> The location of the cafeteria will make it difficult to transition from the Annex in a suitable amount of time for lunch.
>
> Restrooms
> Restrooms near the cafeteria and classrooms are not wheelchair accessible. Restrooms need to be modified for wheelchair access.
>
> Bus Entrance
> It was determined that the cafeteria bus entrance is the most suitable for wheelchair access because of the canopy. The entrance doors do not provide adequate access for a wheelchair. Entrance doors will need to be replaced and automatic door controls installed.
>
> Library
> The only accessible wheelchair access to the Library is by elevator. There is concern about evacuation of the library during an emergency if the elevator cannot be used.

30. Plaintiff's mother sent a follow-up email to Mr. Lester, clarifying that "the elevator itself is not wheelchair accessible. As a student in a wheelchair can't use stairs, an elevator would be the only access to the library, as well as between floors in a multi- story building, and the elevator itself can't accommodate a wheelchair." Mr. Lester responded that he would make the changes to the "ADA deficiencies" list noted by S.F.'s mother.

31. According to a December 23, 2016 news article published in the *Ambler Gazette*, the facilities committee of Board of School Directors met to discuss "potential next steps" for upgrading Sandy Run Middle School. According to the article, the school board was reviewing a contract with an engineering firm for the project.

32. Thereafter, S.F.'s parents learned that any plans to renovate Sandy Run Middle School had been abandoned in favor of ultimately building a new middle school building on the site of the existing middle school buildings.

33. In an August 8, 2017 report from the Sandy Run Project Review Committee ("Committee"), a committee of the Upper Dublin Board of School Directors, to the Board of School Directors, the Committee concluded that "the existing buildings [at Sandy Run Middle School] do not serve our educational program needs or meet ADA compliance."

34. The Committee "expressed concern that the District does not have, and therefore recommended that the District should develop, a long-term district-wide capital plan that integrates the funding required for the projects to be implemented, including the cost of a new building at Sandy Run[.] As informed by the new district-wide capital plan, when the District is prepared to take on a new project at Sandy Run Middle School, the

Committee recommends that both buildings [at Sandy Run Middle School] be replaced with a new building on the existing site."

35. Upon information and belief, any plan for construction of a new building to house the District's middle school program (if ultimately approved and financed) would not be completed in time for S.F. to attend sixth grade.

36. To be sure, on September 15, 2017, Superintendent of Schools Deborah S. Wheeler, Ed.D. reported on the Committee's recommendations, assuring community members that "no decisions have yet been made by the Board about what such a project would entail" and noting concerns from community members "who wish to ensure that the Board does not move hastily and considers all options, that the needs in our other buildings be appropriately addressed, [and] that inclusion of a planetarium and wrestling room be addressed in planning." Dr. Wheeler went on to emphasize that "the Board is committed to due diligence in taking the time necessary to fully consider all possibilities." Dr. Wheeler further noted that the District intended to apply for "Plan Con, the PA Dept of Education school construction reimbursement program," despite a "moratorium on approving new applications for school construction projects," but made clear that the application can be "withdrawn after

submission," confirming that the District has no firm plans to build a new accessible building to house its middle school program.

37. In or about August 2017, S.F.'s parents, through counsel, again requested that Defendant make its middle school program accessible to S.F. Defendant has failed to do so, continuing a decades-long failure to comply with the ADA and RA.

38. To date, despite repeated requests and the fact that providing S.F. access to the middle school program requires advanced planning, the District has failed to provide S.F. access to the middle school program.

39. Without a court order compelling the District to comply with its obligation to make its middle school program accessible to S.F., S.F. will be unlawfully excluded from the Defendant's middle school program.

## COUNT I
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794

40. The preceding paragraphs are incorporated by reference as if fully set forth herein.

41. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or

be subjected to discrimination under any program or activity receiving Federal financial assistance."

42. S.F. has a physical impairment that substantially limits one or more major life activities, including his ability to walk. 29 U.S.C. § 705(20)(B).

43. As a student living in the area served by the School District of Upper Dublin, S.F. is an otherwise qualified individual with a disability.

44. Defendant operates a program or activity receiving federal financial assistance.

45. Federal regulation required federal financial assistance recipients, such as the District, to operate their programs or activities so that when each part is viewed in its entirely, it is readily accessible to and usable by handicapped persons within 60 days of June 3, 1977 unless structural changes are necessary, in which case those changes were required to be made "as expeditiously as possible," but within three years of June 3, 1977 at the latest. Where structural changes to facilities were required, a transition plan setting forth the steps necessary for to complete the changes was required to be developed within six months of June 3, 1977. 34 C.F.R. §§ 104.22(c), (d).

46. By reason of his disability, S.F. is being denied the benefits of and excluded from participation in, Defendant's middle school program.

47. By reason of his disability, Defendant is unlawfully discriminating against S.F.

48. Defendant's failure to make its middle school program accessible to S.F. violates the RA.

## COUNT II
## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12131-12134

49. The preceding paragraphs are incorporated by reference as if fully set forth herein.

50. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

51. S.F. has a physical impairment that substantially limits one or more major life activities, including his ability to walk. 42 U.S.C. § 12102.

52. As a student living in the area served by the School District of Upper Dublin, S.F. is a qualified individual with a disability. 42 U.S.C. § 12131(2).

53. Defendant School District of Upper Dublin is a public entity as defined by Title II of the ADA. § 12131(1).

54. Where structural changes to facilities were to be undertaken to achieve program accessibility, federal regulation required public entities, such as the District, to develop a transition plan within six months of January 26, 1992 setting forth the steps necessary to complete the changes and to make those changes "as expeditiously as possible," but within three years of January 26, 1992 at the latest. 28 C.F.R. §§ 35.150(c), (d).

55. By reason of his disability, S.F. is being denied the benefits of and excluded from participation in, Defendant's middle school program.

56. By reason of his disability, Defendant is unlawfully discriminating against S.F.

57. Defendant's failure to make its middle school program accessible to S.F. violates Title II of the ADA.

## **REQUESTED RELIEF**

Plaintiff S.F., by his parents, K.F. and E.I., respectfully requests that judgment be entered in his favor and against Defendant, together with the following relief: (a) a declaration that Defendant's actions and inactions violate the RA and ADA; (b), injunctive relief enjoining Defendant from continuing to violate RA and ADA and compelling Defendant to remedy its violations; and (c) such other relief as the Court may deem just, proper and equitable, including an award of reasonable attorneys' fees, litigation expenses and costs.

By: __/s/ Shanon S. Levin_____
Shanon S. Levin
Disability Rights Pennsylvania
1315 Walnut Street, Suite 500
Philadelphia, PA 19107-4798
slevin@disabilityrightspa.org
(215) 238-8070
(215) 772-3126 (fax)

Attorney for Plaintiff