IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| S.F., by his parents, K.F. and E.I., *Plaintiff,* v. SCHOOL DISTRICT OF UPPER DUBLIN, *Defendant.* | CIVIL ACTION NO. 17-04328 |

**PAPPERT, J.**                                                                                        April 18, 2018

**MEMORANDUM**

     S.F. is a fourth grade student with cerebral palsy who attends Maple Glen Elementary School in the Upper Dublin School District. S.F. uses a power wheelchair for mobility and a computer to communicate. In the fall of 2019, he will begin middle school, which spans grades six through eight. The District's middle school program is located at Sandy Run Middle School. Unlike Maple Glen, the buildings at Sandy Run are not wheelchair accessible and do not comply with the Americans with Disabilities Act and Rehabilitation Act, something S.F. contends the District fully acknowledges.

     To ensure that the District's middle school program is accessible to S.F., the District will need to renovate Sandy Run, build a new middle school, or make programmatic changes to the middle school program. Whatever solution the District implements will require an agreed upon and approved plan, funding and, acutely relevant here, time. There is currently no plan in place because the District has not decided how it will make its middle school program accessible to S.F.

Through his parents K.F. and E.I., S.F. asks the Court to declare the District in violation of the Rehabilitation Act and ADA and compel the District to provide equal access to its middle school program. The District moves to dismiss the Complaint, asserting that S.F. lacks standing to sue and that his claims are not ripe for adjudication. The District contends that since S.F. will not begin the middle school program until the fall of 2019, he has not suffered an "injury in fact" necessary for him to have standing and that any harm to him is neither imminent nor certain, precluding his claims from being ripe. The District's arguments are superficially appealing, but unavailing when applied to the particular facts alleged by S.F. The Court accordingly denies the District's Motion.

I

S.F. has lived in the Upper Dublin School District since he was a baby. (Compl. ¶ 17.) He has made meaningful friendships by virtue of attending Maple Glen, the District's only wheelchair accessible elementary school. (*Id.* ¶¶ 4, 21.) In October 2015, S.F.'s parents bought a new house in Ambler, Pennsylvania (within the Upper Dublin School District) and invested in the necessary renovations to make it accessible for their son. (*Id.* ¶¶ 13, 17, 20.) S.F. and his parents intend for him to attend Sandy Run, the District's only middle school. (*Id.* ¶ 21.)

Sandy Run consists of two buildings—the annex, built in 1965, and main building, constructed two years later[1]—neither of which is wheelchair accessible. (*Id.* ¶¶ 23, 24.) In January of 2016, S.F.'s mother spoke to the District's then Supervisor of Secondary Education, Dr. Ian Sandberg, about the lack of accessibility at Sandy Run,

---

[1] The sixth grade classrooms are in the annex while the cafeteria, main gym and library are located in the main building. (*Id.* ¶ 23.)

something S.F.'s mother had initially discussed with Sandberg earlier in that school year. (*Id.* ¶ 26.) S.F.'s mother asked Sandberg to meet and also set up a tour of the middle school. (*Id.*) In March 2016 and May 2017, S.F.'s parents met with District officials and toured Sandy Run. (*Id.* ¶ 27.) After the May 2017 tour, the District's Director of Facilities, Robert Lester, acknowledged and compiled a list of numerous ADA deficiencies throughout the school buildings.

Lester's list noted, for example, that the entrance to the annex and doorways to the classrooms in the annex are too narrow for a wheelchair and there are no automatic doors or wheelchair accessible classrooms or bathrooms. The breezeway exit vestibule leading to the main building is also not configured for wheelchair access. (*Id.* ¶ 29.) In the main building, the slope of the breezeway ramp does not comply with the ADA and the entrance leads to a hallway without access to a ramp. Additionally, none of the bathrooms located near the classrooms or cafeteria are wheelchair accessible. While the "cafeteria bus entrance" is the most suitable for wheelchair access, it lacks automatic doors. (*Id.*) Lester told S.F.'s parents that he had spoken to School Superintendent Deborah Wheeler and District Business Administrator Brenda Brae about what needed to be done to address these barriers. (*Id.* ¶ 28.)

After a December 2016 School Board Facilities Committee meeting, S.F.'s parents learned that the School Board was reviewing a contract with an engineering firm to upgrade the school. (*Id.* ¶ 31.) Sometime thereafter however, they "learned that any plans to renovate [the school] had been abandoned in favor of ultimately building a new middle school building on the site of the existing middle school buildings." (*Id.* ¶ 32.) In August 2017, the Sandy Run Project Review Committee

issued a report which confirmed that the Sandy Run buildings "do not serve our educational program needs or meet ADA compliance." (*Id.* ¶¶ 2, 33.) The Committee recommended that the District develop "a long-term district wide capital plan that integrates the funding required for projects to be implemented, including the cost of a new building" at Sandy Run. (*Id.* ¶ 34.) S.F.'s parents thereafter contacted the District once again to request that Sandy Run make the necessary accommodations such that S.F. could attend the school in September 2019. (*Id.* ¶ 37.) In September 2017, Wheeler informed the community that "no decisions" had been made about plans to either renovate or build a new facility. (*Id.* ¶ 36.) She noted that "the Board is committed to due diligence in taking the time necessary to fully consider all possibilities" and that the District intended to apply to the Pennsylvania Department of Education for funds which could reimburse the District for school construction costs. (*Id.*)

S.F. filed suit shortly thereafter. The District moves to dismiss the case pursuant to Rule 12(b)(1) for lack of standing and Rule 12(b)(6) for lack of ripeness. The District, also pursuant to Rule 12(b)(6), contends that there is no private right of action to enforce self-evaluation or transition plan regulations under the ADA and Rehabilitation Act. (Mot., ECF No. 7.) In S.F.'s Response to the District's Motion, he clarifies that he "does not assert claims against the district based on its violations of the self-evaluation and transition plan regulations," and the Court will thus address only the standing and ripeness challenges. (Pl's Resp. in Opp., at 21, ECF No. 9.)

4

## II

### A

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) *modified, Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). Here, the District makes a facial attack. (Mot., at 7.) When presented with a facial attack, the Court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc.*, 220 F.3d at 176. The plaintiff bears the burden of showing that the action is properly in federal court. *Samuel-Basset v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the complaint will survive defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it

must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). The Court should "construe truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 791.

B

Section 504 of the Rehabilitation Act "prohibits programs that receive federal funds from discriminating against an individual based on disability." *Abbott v. Atl. City*, No. 11-4851, 2017 WL 1137441, at *12 (D.N.J. Mar. 27, 2017) (citing 29 U.S.C. § 794(a)). Similarly, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[2] The substantive standards for determining liability are the same under the Rehabilitation Act and the ADA. *See McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995).

Public entities, like public schools, that were built before January 26, 1992 are considered "existing facilities." Entities whose buildings are existing facilities must provide program access such that when viewed in its entirety, the program—not the facility—is "readily accessible to and usable by individuals with disabilities." 28 C.F.R.

---

[2] The District receives federal funds, thus it is covered under Section 504 of the Rehabilitation Act. The District is similarly covered under Title II of the ADA because it is a "public entity." *See* 42 U.S.C. § 12131(1).

§ 35.150(a)(1). Public entities do not necessarily need to make structural changes, instead, "any…methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities" are sufficient. 28 C.F.R. § 35.150(b)(1).[3]

III

A

A defendant may move to dismiss pursuant to Rule 12(b)(1) citing a lack of standing under Article III of the Constitution. *Enslin v. The Coca-Cola Company*, 136 F. Supp. 3d 654 (E.D. Pa. 2015) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998)). Standing is evaluated at the time of the filing of the complaint. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 190–91 (2000). To establish Article III standing, a plaintiff must show: (1) he suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish an injury in fact, a plaintiff must show that the injury is concrete and particularized and actual or imminent—not hypothetical. *Id.* at 560–61. For a future harm to constitute an injury-in-fact, a plaintiff must show that it is likely that he will suffer future harm. *Free Speech Coal., Inc. v. Attorney Gen. United States*, 825 F.3d 149, 166 (3d Cir. 2016).

The Third Circuit Court of Appeals has not directly addressed the contours of the injury in fact requirement in ADA cases. *Abbott,* 2017 WL 1137441, at *14; *Garner v. VIST Bank*, No. 12-5258, 2013 WL 6731903, at *5 (E.D. Pa. Dec. 20, 2013). While

---

[3] The same rules apply for existing facilities under the Rehabilitation Act. *See* 34 C.F.R. § 104.22(b).

7

neither party addresses them in their papers, district courts within the Circuit have used two methods to determine whether a plaintiff can show a sufficiently imminent injury in fact: the intent to return method or the deterrent effect method. *Garner,* 2013 WL 6731903, at *4; *see also Hollinger v. Reading Health Sys.*, No. 15-5249, 2017 WL 429804, at *7 (E.D. Pa. Jan. 31, 2017)*; Heinzl v. Boston Mkt. Corp.*, No. 14-997, 2014 WL 5803144, at *5 (W.D. Pa. Nov. 7, 2014); *Klaus v. Jonestown Bank & Tr. Co. of Jonestown, PA*, No. 12-2488, 2013 WL 4079946, at *8 (M.D. Pa. Aug. 13, 2013). Either method is sufficient to establish the injury in fact element of standing. (*Id.*)

The intent to return method does not apply to this case, but the deterrent effect method does.[4] Under the deterrent effect method, "a plaintiff is considered to have suffered an actual injury when he or she is deterred from patronizing a public accommodation because of accessibility barriers." *Garner*, 2013 WL 6731903, at *6. First, the plaintiff must show that he has actual knowledge of the barriers. Second, he must show that there is a reasonable likelihood that he will use the facility if not for those barriers. *Id.*

B

The District contends that S.F. lacks standing because he has not shown an actual or imminent injury. Specifically, it contends that any future harm is "purely speculative" because it has not reached a decision about how it will make Sandy Run

---

[4] Under the intent to return method, the plaintiff must show: (1) the defendant engaged in past discriminatory conduct that violates the ADA; (2) it is reasonable to infer that the conduct will continue; and (3) it is reasonable to infer based on past patronage, proximity to the plaintiff's home or personal connections to the area that he intends to return to the public accommodation in the future. *Garner*, 2013 WL 6731903, at *5. This method is commonly used for cases where individuals visit a restaurant or hospital, but are unable to access the program or facility because of certain barriers, and the individual intends to return to the location in the future. *See Hamill v. N. Wildwood City*, No. 10-6587, 2013 WL 1007297 (D.N.J. Mar. 11, 2013); *Phillips v. St. Mary Med. Ctr.*, No. 12-2363, 2013 WL 1124372 (E.D. Pa. Mar. 19, 2013).

8

accessible to S.F. (Mot., at 16.) S.F. alleges an injury in fact; specifically, he alleges facts which show that it is likely that he will suffer future harm. The Complaint alleges not only that the Sandy Run facilities fail to comply with the Rehabilitation Act and the ADA, but that the District acknowledges these deficiencies and also acknowledges that whatever plan it develops will be a long term effort which they are committed to taking the "time necessary" to determine. *See supra* Section I. Further, S.F.'s allegations show that there is a reasonable likelihood that he will attend Sandy Run if the middle school program is accessible to him. First of all, S.F. claims that he (and his parents) intend for him to go to Sandy Run for middle school. (Compl. ¶¶ 4, 21.) S.F. has always attended school within the District and his parents purchased and renovated a new home located within the District. (*Id.* ¶¶ 18, 20.) Further, the only middle school program within the District is at Sandy Run. (*Id.* ¶ 2.) Finally, his parents' involvement over the past two years demonstrates the family's intent to have S.F. attend the middle school program at Sandy Run. His parents have met with District officials on numerous occasions in an effort to develop a plan to remedy the accessibility shortcomings at Sandy Run; his father even served on a school board committee that focused on the problems with those facilities. (*Id.* ¶¶ 26–30, 5.)

IV

A

Ripeness challenges may be brought pursuant to Rule 12(b)(6). *Cowell v. Palmer Township*, 263 F.3d 286, 290–91 (3d Cir. 2001).[5] Ripeness is a doctrine that seeks "to prevent the courts…from entangling themselves in abstract disagreements…." *Abbott*

---

[5] Ripeness challenges may also be brought pursuant to Rule 12(b)(1). *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994).

9

*Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), *overruled on other grounds by California v. Sanders*, 430 U.S. 99, 105 (1977). To determine whether a claim is ripe, courts consider: (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Abbott Labs.*, 387 U.S. at 149. To assess the fitness of the issues for decision, courts examine whether the claim involves uncertain or contingent events, the extent to which the claim is bound up in the facts, and whether the parties are sufficiently adverse. *Phila. Fed. of Teachers, Am. Fed. of Teachers, Local 3, AFL-CIO v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998). To assess hardship, courts examine whether the "challenged action creates a direct and immediate dilemma for the parties." *Id.*

B

The District asserts that S.F.'s claims are not ripe because S.F. will not begin middle school until the fall of 2019 and there are a number of ways to make the program accessible to S.F. by that time. (Mot., at 11, 13.) Viewing the facts in the light most favorable to S.F., as the Court must do at this stage, S.F.'s claims are fit for judicial review and delaying consideration of his allegations would create an immediate dilemma for the parties—indeed, it already has; the District is trying to figure out how to remedy those shortcomings at Sandy Run which make the middle school program inaccessible to S.F.

"Ripeness is a matter of degree whose threshold is notoriously hard to pinpoint." *NE Hub Partners, L.P., v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001). The District contends that S.F. "incurs no hardship or injury until [it] fails to make its middle school program accessible to S.F.," relying on *Douris v. Bucks County Office of*

*District Attorney*, No. 04-232, 2005 WL 226151 (E.D. Pa. Jan. 31, 2005). (Mot. at 11.) While pinpointing that threshold may be an inexact science, the District's definition of ripeness, if followed, could preclude S.F. from obtaining any meaningful remedy until it is too late. The ripeness doctrine is not designed to facilitate such a result.

First of all, the District's position can only reasonably be interpreted to mean that S.F. will be injured when it tells him, definitively, that he cannot participate in the middle school program when he starts sixth grade. The District does not hint when that might be, nor does it suggest if or when, at any point before the 2019 school year begins, S.F.'s claims may ripen. S.F. alleges that the buildings at Sandy Run fail to comply with the ADA and Rehabilitation Act and that the District admits as much. (Compl. ¶¶ 29, 33.) In fact, District officials have been meeting and discussing the buildings' deficiencies with S.F.'s parents since the 2015-2016 school year. The District officials' actions over the past two years, including touring Sandy Run's buildings with S.F.'s parents, making a list of the ADA deficiencies and then acknowledging that they need a long term plan to correct the problems but that they don't yet know what it is, have given certainty to S.F.'s claims and make them more than just contingent.

Secondly, *Douris* is easily distinguishable from the facts of this case. James Douris was a serial *pro se* plaintiff with a track record of failed lawsuits against Bucks County, county officers and others alleging, *inter alia*, violations of the ADA. He again sued the County, along with the County District Attorney's Office and others, alleging violation of his rights under several federal laws, including the ADA and Rehabilitation Act. 2005 WL 226151, at *4. Douris, a master plumber by trade, inquired about an Accounting Assistant position with the District Attorney's Office. He did not, however,

even apply for the job and it was obviously never offered to him. He nonetheless claimed that if he received an offer and accepted the job, he wouldn't be able to park in the handicapped designated parking places in proximity to his office because the spots required the placement of coins in the parking meters, something he as a handicapped person could not do, putting him at risk of receiving parking tickets. The defendants moved to dismiss the claims on several grounds, including ripeness. *Id.* at *9. The court granted the motion because Douris' claims were not merely contingent; they were premised on a string of contingencies. He would have to apply for the job, (presumably) convince the District Attorney's Office that his plumbing skills would make him an effective Accounting Assistant, be offered the job, accept it, have to park where he couldn't feed the meter and then receive one or more parking tickets.

S.F.'s anticipated participation in the middle school program is obviously far less contingent, and much more certain. S.F. attends grade school within the District and the facts in his Complaint make clear that he fully intends to attend the middle school program at Sandy Run, the District's only middle school. His parents have done and are doing everything that they can to make sure that happens. Accepting as true the facts alleged in S.F.'s Complaint, the only thing S.F.'s middle school program participation is contingent on is the District's ability to timely remedy the agreed upon numerous barriers to the program's accessibility.

The only middle school program in the District is not accessible to S.F. and the District needs time, and likely a lot of it, to devise, agree upon and have approved a long term plan it can implement. With less than seventeen months until S.F. begins sixth grade, it is appropriate for the Court to take up the issue now. The District can

12

continue its efforts to devise and implement the appropriate plan to make its middle school accessible to S.F., but those efforts can go forward in the context of this litigation.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.