IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

S.F.
*by his parents, K.F. and E.I.,*

                    *Plaintiff,*

          v.

SCHOOL DISTRICT OF UPPER DUBLIN,

                    *Defendant.*

CIVIL ACTION
NO. 17-04328

## ORDER

**AND NOW**, this 20th day of September, 2018, upon being notified by the parties that they have resolves this matter pursuant to a Consent Decree requiring Court approval, which is attached, it is hereby ORDERED as follows:

1. The Consent Decree is approved and incorporated by reference in this Order.

2. The parties stipulate that this case will be dismissed.

3. In accordance with the terms of the Consent Decree, the Court will retain continuing jurisdiction to administer, interpret and enforce the Consent Decree.

4. The parties shall file a Consent to a Magistrate Judge Form with the Clerk of Court.

                              BY THE COURT:


                              */s/ Gerald J. Pappert*
                              GERALD J. PAPPERT, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **S.F., by his parents, K.F. and E.I.,**<br>**Plaintiff,** | : | |
| | : | **Civil Action No.: 17-4328** |
| | : | |
| **v.** | : | |
| | : | |
| **SCHOOL DISTRICT OF UPPER**<br>**DUBLIN,** | : | |
| **Defendant.** | : | |

## CONSENT DECREE

WHEREAS, on September 28, 2017, S.F., by his parents K.F. and E.I., ("Plaintiff") filed a civil action in the United States District Court for the Eastern District of Pennsylvania, Civil Action No. 17-4328, against the School District of Upper Dublin ("Defendant" or "District") alleging that Defendant violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by denying him equal access to Defendant's middle school program due to physical barriers to wheelchair accessibility;

WHEREAS, S.F. is an individual with a disability who uses a power wheelchair for mobility;

WHEREAS, the Defendant's middle school program, which serves grade six through eight, is located at Sandy Run Middle School ("Sandy Run") and is presently housed in two buildings referred to as the "Main Building" and the "Annex";

WHEREAS, the parties desire to resolve this lawsuit amicably and to avoid the risks and expense of further litigation;

NOW, THEREFORE, for and in consideration of the promises and agreements contained in this Consent Decree, which the parties agree constitute good and sufficient consideration, the parties agree to and the Court enters the following Consent Decree.

1.    **Purpose**:

a.    The parties intend for the District to provide S.F. with physical access to its middle school program in a manner that is accessible to and usable by him in the most integrated setting appropriate to his needs and in a manner that encourages rather than restricts S.F.'s independence.  The District intends not to open Sandy Run to students for the 2019-20 school year unless and until the District is in full compliance with this Consent Decree as it applies to the 2019-20 school year.  The District likewise intends not to open Sandy Run to students for subsequent school years unless and until the District is in full compliance with this Consent Decree as it applies to each of those school years.

b.    In the event that the District opens Sandy Run to students and is not in full compliance with the terms of this Consent Decree as to the provisions that require compliance before the 2019-20 school year, the District agrees that it will pay a penalty to be used by Plaintiff's parents for Plaintiff of $1,000 per day until full compliance is achieved.  In addition, in the event that the District is not in full compliance with the terms of this Consent Decree as to the provisions that require compliance before the 2019-20 school year, the District

agrees that it will provide a qualified teacher to provide S.F.'s educational program in his home starting on the first day of school and continuing until full compliance is achieved, to the extent S.F.'s parents decide to actually keep S.F. home due to the District's non-compliance, and to the extent that school is otherwise in session for the other students in S.F.'s grade.  If there is any dispute about whether the District has fully complied, the District will provide the teacher described in this Paragraph until such dispute is resolved, to the extent S.F.'s parents decide to actually keep S.F. home from school during the pendency of such dispute.  By making this agreement, Plaintiff is in no way waiving his right to be educated in his neighborhood school with his peers and will have the right to immediately seek a Court Order of contempt, the imposition of additional fines, and any other available remedy.

2.      **Middle School**:  The District agrees that S.F. will attend Sandy Run, his neighborhood middle school, under the terms set forth herein, for middle school (sixth through eighth grades), subject to all other eligibility and academic achievement requirements otherwise provided by law, subject to any IEP plan properly implemented by the District in accordance with applicable law and agreed to and approved by S.F.'s parents, and subject to his parents' wishes. If the New Middle School described in Paragraph 3 below is open to students while S.F. remains in middle school, he will attend the New Middle School with his peers.

3.   **New middle school facility**:

a.     It is the District's plan to construct a new middle school and associated grounds ("New Middle School"), which is scheduled to be completed for the 2022-23 school year. The District will construct the New Middle School so that it is accessible to and usable by S.F.  The District will ensure that the New Middle School fully complies with the 2010 Americans with Disabilities Act Standards for Accessible Design codified at 28 C.F.R. § 36 Appx. A ("2010 ADA Standards").

b.     The District will provide construction plans for the New Middle School sufficient for Plaintiff to determine whether the New Middle School meets the terms of this Consent Decree to Plaintiff by August 9, 2019.   Within 30 days of receiving the plans, Plaintiff will submit to Defendant any concern regarding compliance with the 2010 ADA Standards to Defendant.  Any agreement regarding modifications to the construction plans will be reduced to writing as an Addendum to this consent decree.  If Defendant does not provide corrected plans fully addressing an issue raised by Plaintiff within 30 days of being notified of the issue by Plaintiff, Plaintiff shall have the right to seek enforcement of this Consent Decree or modification of the plans from the Court to reflect the obligations of the District as required by the Consent Decree. Defendant shall not be entitled to claim that a modification cannot be made because making the modification will interfere with or delay the construction schedule.  The District will provide a copy of any revised plans to Plaintiff.  The

agreed-upon plans will be identified in a separate writing and incorporated into this Consent Decree by reference.

4.    **Annex**: As of the beginning of the 2019-20 school year, the District will close the Annex to all students.

5.    **Breezeway**: As of the beginning of the 2019-20 school year, the District will close the breezeway connecting the Main Building and the Annex to all students.

6.    **Modular space**: The District will install modular space meeting the 2010 ADA Standards beginning in the 2019-20 school year and continuing as long as S.F. attends the existing Sandy Run in the location indicated on the attached diagram.  The modular space will include modular classrooms for sixth grade, multi-user boys' and girls' toilet rooms, and a unisex single-user toilet room as depicted on the attached diagram.   The District will ensure that the modular space and any associated new construction complies with the 2010 ADA Standards.  The District will provide plans for the modular space sufficient for Plaintiff to determine whether the modular space meets the terms of this Consent Decree to Plaintiff by November 9, 2018. In the event that Defendant provides to Plaintiff all non-privileged, non-draft documents and information in its possession, custody or control showing or describing the construction, measurements and layout of the modular space, including without limitation, the full request for proposal submitted to its third-party vendors, by November 9, 2018, and such documents are not sufficient for Plaintiff to determine whether the modular space meets the terms of this Consent Decree, then Defendant, upon

notice by Plaintiff to be provided no later than December 9, 2018, shall have until March 31, 2019 to supplement the plans provided by obtaining additional documentation or information. Prior to March 31, 2019, Defendant will provide information as soon as it becomes available, including, but not limited to, the awarded proposal by January 31, 2019. Within 30 days of receiving plans sufficient for Plaintiff to determine whether the modular space meets the terms of this Consent Decree, Plaintiff will submit any concern regarding compliance with the Consent Decree to Defendant. If Defendant does not provide corrected plans fully addressing an issue raised by Plaintiff within 30 days of being notified of the issue by Plaintiff, Plaintiff shall have the right to seek enforcement of the Consent Decree or modification of the plans from the Court to reflect the obligations of the District as required by the Consent Decree. Defendant shall not be entitled to claim that a modification cannot be made because making the modification will interfere with or delay the construction schedule. The District will provide a copy of any revised plans to Plaintiff. The agreed-upon plans will be identified in a separate writing and incorporated into this Consent Decree by reference. Inspection of the modular space will take place in conjunction with the inspection of the Main Building modifications as provided in Paragraph 37. The procedures outlined in Paragraph 37 will apply equally to the modular space.

7.   **New entrance vestibule**: The District will construct a new entrance vestibule at the location depicted on the attached diagram for use beginning in the 2019-20 school year. This will be the location of the bus pick-up and drop-off for students. The District will ensure that the new entrance vestibule

complies with the 2010 ADA Standards.  The District will provide plans for the new entrance vestibule sufficient to determine whether the new entrance vestibule meets the terms of this Consent Decree to Plaintiff by November 9, 2018.  Within 30 days of receiving the plans, Plaintiff will submit any concern regarding compliance with this Consent Decree to Defendant.  If Defendant does not provide corrected plans fully addressing an issue raised by Plaintiff within 30 days of being notified of the issue by Plaintiff, Plaintiff shall have the right to seek enforcement of the Consent Decree or modification of the plans from the Court to reflect the obligations of the District as required by the Consent Decree. Defendant shall not be entitled to claim that a modification cannot be made because making the modification will interfere with or delay the construction schedule.   Any agreement regarding modifications to the construction plans will be reduced to writing as an Addendum to this consent decree.  The District will provide a copy of any revised plans to Plaintiff.  The agreed-upon plans will be identified in a separate writing and incorporated into this Consent Decree by reference.   Inspection of the new entrance vestibule will take place as provided in Paragraph 37.

8.    **Automatic door control at new entrance**: The District will install an ADA-accessible automatic door control at the new entrance described in the preceding paragraph.  The new entrance vestibule doors will be unlocked and open during bus drop-off and pick-up times; the automatic door button will also be active and able to be used during those times.  At all other times, the default will be that the automatic door button is locked.  If S.F. wishes to enter or leave

7

the building through the new entrance at a time when the new entrance is usually locked, he will be seen by security on a camera. The District will install a button at wheelchair-accessible height to alert security to his presence or other accessible device or device that automatically detects S.F.'s presence, provided that it is usable by S.F. Upon confirming S.F.'s presence and authorization to enter or leave and confirming that conditions are otherwise safe, the automatic door control will be unlocked for S.F.'s use.

9. **Parking and passenger loading**: The District will provide parking and passenger loading zones as of the beginning of the 2019-20 school year as required by the 2010 ADA Standards, in proximity to the modular space described in Paragraph 6 above. To that end, the parking and passenger loading zones will be substantially completed by August 23, 2019 (although issuance of a Certificate of Occupancy for the modular space may not be completed until September 2, 2019). As used above and throughout this Consent Decree, a modification shall be "substantially complete" when it is in a state that, while it may not yet have a Certificate of Occupancy or final approval by local government officials, is otherwise able to be used for its intended purpose. Grading and curb cuts will be completed by August 15, 2019. Inspection of the parking and passenger loading zones will take place as provided in Paragraph 37.

10. **Nurse's office**: The District will lower the paper towel dispenser and soap dispenser in the nurse's office as required by the 2010 ADA Standards. Insulation will be installed on the pipes under the sink in the nurse's office. The

8

District will ensure that privacy screens will continue to be provided to students for interaction with treatment professionals.  The District will maintain the sink in the nurse's office (outside the bathroom).

11.    **Library**:  The District will lower the library check-out counter to the height required by the 2010 ADA Standards. The District will create and maintain an ADA-accessible pathway between the library stacks to comply with the 2010 ADA Standards.  The District will remove the display case in front of the elevator in the library and ensure that no other obstacles block or obstruct a wheelchair-accessible pathway between the elevator and the library.  The District will provide a library workstation in accordance with the 2010 ADA Standards to the extent a library workstation is provided for use by students.  As of the 2019-20 school year, the District will not hold any regularly scheduled classes in the classrooms in the library and S.F. will not have any classes in those rooms.

12.    **Cafeteria**:  The District will lower the condiment/utensil stations in the cafeteria to meet the 2010 ADA Standards or will install new stations that meet the 2010 ADA Standards.  The District will provide ADA-accessible interior cafeteria seating for S.F. and ensure that it is available to him. The District shall ensure that S.F. is integrated with other students while in the cafeteria.  To that end, the District will provide an ADA-accessible table which shall be movable, such that other students can eat with him at the same table or the table can be moved up to another table so that S.F. can eat with students seated there.  The table will have the capability of being used for either.  The District will provide two exterior picnic tables meeting 2010 ADA Standards on the cafeteria patio, which

9

may be accomplished either through the purchase of new tables or the refurbishment of existing tables.  The District will repair the threshold between the cafeteria and the outdoor patio to meet 2010 ADA Standards.

      13.    **Furniture**: The District will ensure that furniture in the library, common areas and classrooms is moved, where necessary, to create an accessible pathway under 2010 ADA Standards.  The District will provide classroom and common area furniture for S.F.'s use that meets 2010 ADA Standards.

      14.    **Cooking**:  The District will provide a workstation for cooking meeting the requirements of the 2010 ADA Standards in the Family and Consumer Science Classroom used by other students for cooking (including the required 30-inch-wide work surface adjacent to an accessible oven so that a student who uses a wheelchair can position himself so that items can be inserted or removed from the oven or other arrangements as agreed in writing and added to this Consent Decree as an Addendum).  The workstation may be portable provided that it meets the 2010 ADA Standards, but will always be in place prior to the start of any class that S.F. takes in the Family and Consumer Science Classroom.

      15.    **Locker**:  The District will provide an accessible locker with accessible lock for S.F.'s use in seventh and eighth grades either inside or directly outside his special education room.  The District will provide S.F. with an accessible lock and locker in New Middle School to the extent students without disabilities are provided with lockers.

16.    **Music**:  The District will ensure that S.F. has music class in the non-tiered music classroom (room 406). The District shall repair or replace the threshold of that room to meet 2010 ADA Standards.

17.    **Emergency evacuation plan**:  The following emergency evacuation plan will be put in writing by the District and the District will obtain written approval from the fire marshal by December 17, 2018:  The emergency evacuation plan will specify that in the event of an emergency while S.F. is in the library, S.F. and his aide will report to the library stairway, which is fire-rated. S.F.'s aide will report S.F.'s location by two-way radio.  S.F.'s aide will be provided with a two-way radio for this purpose. The first responder on the scene will immediately evaluate the area of refuge and provide instruction regarding whether S.F. should shelter in place, use the elevator, or be evacuated by emergency personnel.  Within 10 days of approval of the plan by the fire marshal, the District shall provide a copy of the plan and approval to Plaintiff.

18.    **Accessible work stations**:  The District will provide ADA-accessible art, photography, computer, and science workstations (with sink) for S.F.'s use as of the 2019-20 school year.  To the extent that a portable workstation(s) can be used to accomplish this, that is permissible, provided that the workstation is in place in the classroom in which S.F. is about to receive instruction prior to the time each class begins and provided that the workstation meets 2010 ADA Standards.

19.    **Elevator**:  The District will install a metal sill to correct the elevator gap.  The District will provide S.F.'s aide(s) with a key to the elevator.  Other issues relating to the elevator can be raised by Plaintiff outside of this litigation.

20.    **Elevator maintenance**:  The District will ensure that regular maintenance on the building's elevator takes place outside of school hours. The District will ensure that the District's service contract with its elevator service provider mandates at least a two-to-three-hour response time in the event that maintenance that is not regularly scheduled is required, and the District will contact the service provider to perform such maintenance immediately.  The District shall ensure that the two-to-three-hour response time is enforced.  The District will use reasonable efforts to ensure that the elevator will not be out of service for more than 24 hours.  In the event that the elevator will be out of service for more than 24 hours, the District shall provide immediate written notice by email sent to    REDACTED    and    REDACTED    to Plaintiff's parents with a timeline for repair and an explanation of the reason for the service outage. Before the beginning of each school year, the parties will develop a plan in writing agreed upon by both parties for education and bus pick up in the event of an elevator service issue. Application to the Court can be made for resolution of any dispute.

21.    **School store**: The District will install a Dutch door with ADA-accessible height at the school store.

22.    **Door handles**:  The District will install door handles that comply with the 2010 ADA Standards on all doors in the modular/newly built space and

all doors at Sandy Run that will be used by S.F. before the start of each school
year, including common areas and his classrooms.

23.    **Wrestling room and adjacent rooms**:  As of the beginning of the
2019-20 school year, the District will ensure that the only program activities that
will take place in the wresting room and adjacent rooms on the lower level will be:
(a) regularly scheduled health class and (b) ad hoc usage as overflow space for
special class projects. S.F.'s health class will not be located on this lower level.
To the extent extra space is needed for any of S.F.'s classes, the District will
ensure that accessible space in another area of the building will be used.

24.    **Planetarium**:  The District will designate ADA wheelchair-
accessible seating/companion seating in the planetarium with appropriate
signage.

25.    **Exterior doors near the cafeteria**: The District will install 60/40
split doors at exterior doors near the cafeteria that comply with the 2010 ADA
Standards.  Only one leaf of these doors need provide 32 inches of clear opening
width.

26.    **Main office**:  The District will provide a service counter in the main
office that complies with the 2010 ADA Standards.

27.    **Existing main office entrance**:  At the existing Main Entrance
doorway, the District will equip one leaf with an automatic door control for both
sets of doors that will be turned on by the security booth.  The control itself will be
accessible in compliance with 2010 ADA Standards.  The District will ensure that

the security booth will be continuously monitored between 7:15 a.m. and 3:15 p.m. The District will replace the threshold to meet 2010 ADA Standards.

28.   **Sidewalk repairs**: The District will make sidewalk repairs (as described in Nos. 2-5 in the July 30, 2018 Marinelli report) near the Main Entrance, which require the repair of sidewalk gaps exceeding ½ inch and correction of the curb ramp slope and landing.  The District shall ensure that the grounds of Sandy Run will be maintained and repaired, as needed, to provide wheelchair access.

29.   **Interior doorways**:  The District shall modify one leaf of the following interior double doors to provide 32 inches of clear width: music (room 406), the art room that S.F. will use, industrial arts/computer, cafeteria, and the gym (both sides).  One leaf of each door need not have 32 inches of clear opening width.

30.   **Outdoor recreation space**:  Beginning in the 2019-20 school year and continuing until the new middle school opens, the District shall ensure that no middle school student will participate in outdoor gym class or other outdoor activity (other than as it relates to the outdoor patio to the cafeteria as provided in paragraph 12) and that no middle school sports teams will have outdoor "home field" matches/games/meets.

31.   **Lift**:  The District shall install a lift with auxiliary power hookup connected to the school's generator battery back-up where the stairs near the gym are located. The District shall ensure that regular maintenance on the lift will take place outside of school hours. The District shall ensure the District's service

14

contract with its lift maintenance provider mandates at least a two-to-three-hour response time in the event maintenance that is not regularly scheduled is required, and the District will contact the service provider immediately in the event non-regularly scheduled maintenance is necessary. The District shall ensure that the two-to-three-hour response time is enforced. The District will use reasonable efforts to ensure that the lift will not be out of service for more than 24 hours. In the event that the lift will be out of service for more than 24 hours, the District shall provide immediate written notice by email sent to

REDACTED        and        REDACTED        to Plaintiff's parents with a

timeline for repair and an explanation of the reason for the service outage. Before the beginning of each school year, the parties, if applicable, will develop a plan in writing agreed upon by both parties for education in the event of a lift service issue. Application to the Court can be made for resolution of any dispute.

32.    **Special education classroom**: S.F.'s sixth grade special education classroom will be in the modular space. S.F.'s seventh and eighth grade special education classes will not be held in the classrooms located in the hallway accessed by the lift.

33.    **Conferences**: The District will ensure that conferences/meetings involving S.F. will be held in an accessible room with an accessible table.

34.    **Auditorium**: The District shall ensure that auditorium usage adheres to the following protocol:

a.    As it relates to assemblies held during the school day, if S.F.'s class or grade has an assembly, the District will move it to an ADA-

15

accessible location.  If S.F.'s class or grade is not attending the assembly, the assembly can be held in the auditorium.

b.      During S.F.'s sixth grade year, the District will ensure that the sixth-grade play, which is performed outside of school hours, is moved to an accessible location (likely the high school).  If S.F. participates as a cast or crew member, the District will also move rehearsal to an accessible location. Once S.F. is in seventh grade, the sixth-grade play can be performed in the auditorium.

c.      During S.F.'s seventh-grade year and eighth-grade year, the District will ensure that the seven/eighth-grade play, which is performed outside of school hours, is moved to an accessible location (likely the high school).  If S.F. participates as a cast or crew member, the District will also move rehearsal to an accessible location. When S.F. is in seventh and eighth grades, the sixth-grade musical can be held in the auditorium.

d.      The District also plans to hold one additional event with one performance annually (typically a lip-sync contest, comedy production or other similar event).  The District will hold this performance in an accessible location for S.F.'s sixth, seventh and eighth grade years.

e.      The District will not hold any events where students are eligible to participate or be audience members in Sandy Run's auditorium unless expressly provided for herein.

35.      **Locker room:** The District will create a single-user locker room with a toilet, sink/soap/paper towel dispenser, and bench in accordance with 2010 ADA Standards in the space marked "cust off" and indicated "S.F. locker

16

room" on the attached diagram. The locker room will either have an ADA-accessible locker and lock in it or it will have an accessible place for storage of clothing and book bag, etc., such as a cubby, if the locker room itself has an ADA-accessible lock, to which only S.F., his aides, District administration and faculty will have access.   By February 1, 2019, the District will provide plans for the single-user locker room sufficient for Plaintiff to determine whether these items meet the terms of this Consent Decree. Within 30 days of receiving the plans, Plaintiff will submit any concern regarding compliance with this Consent Decree to Defendant.  If Defendant does not provide corrected plans fully addressing an issue raised by Plaintiff within 30 days of being notified of the issue by Plaintiff, Plaintiff shall have the right to seek enforcement of the Consent Decree or modification of the plans from the Court to reflect the obligations of the District as required by the Consent Decree.  Defendant shall not be entitled to claim that a modification cannot be made because making the modification will interfere with or delay the construction schedule.   Any agreement regarding modifications to the construction plans will be reduced to writing as an Addendum to this consent decree.  The District will provide a copy of any revised plans to Plaintiff.  The agreed-upon plans will be identified in a separate writing and incorporated into this Consent Decree by reference.   Inspection will take place as provided in Paragraph 37.

  36. **Bathrooms**:

    a. The District will provide bathrooms meeting 2010 ADA Standards as indicated on the attached diagram as B1-B6 with single-user

bathrooms provided at the space indicated "proposed ADA toilet" and at the space indicated in the modular classroom area.  The parties agree that urinals do not have to be ADA compliant.  Other toileting issues, including, but not limited to, additional single user bathrooms and other bathroom modifications, can be raised by Plaintiff outside of this litigation.

      b.     By February 1, 2019, the District will provide plans for the new space indicated on the attached diagram as "proposed ADA toilet" described in Paragraph 36(a) sufficient for Plaintiff to determine whether these items meet the terms of this Consent Decree. Within 30 days of receiving the plans, Plaintiff will submit any concern regarding compliance with this Consent Decree to Defendant.  If Defendant does not provide corrected plans fully addressing an issue raised by Plaintiff within 30 days of being notified of the issue by Plaintiff, Plaintiff shall have the right to seek enforcement of the Consent Decree or modification of the plans from the Court to reflect the obligations of the District as required by the Consent Decree. Defendant shall not be entitled to claim that a modification cannot be made because making the modification will interfere with or delay the construction schedule.   Any agreement regarding modifications to the construction plans will be reduced to writing as an Addendum to this consent decree.  The District will provide a copy of any revised plans to Plaintiff.  The agreed-upon plans will be identified in a separate writing and incorporated into this Consent Decree by reference.   Inspection will take place as provided in Paragraph 37.

37.   **Inspection**:

a.      The parties agree that the District will fully comply with all of its obligations regarding the Main Building set forth herein prior to the beginning of the 2019-20 school year, which will not begin before September 3, 2019, except where a later date is expressly indicated for compliance.  To that end, the District will complete the modifications and other items relating to the Main Building required herein by May 1, 2019, with the exception of those modifications and other items set forth immediately below in paragraph (b).

b.      The following modifications need not be completed by May 1, 2019, and instead will be completed on the dates indicated:

i.      the new entrance vestibule (described in Paragraph 7 above) shall be substantially completed by August 23, 2019 (although it shall be available for inspection for accessibility and any outstanding accessibility modifications shall be included by the District on the Accessibility Punch List described herein by the date set forth below);

ii.      the single-user locker room (described in Paragraph 35 above), and the new space indicated on the attached diagram as "proposed ADA toilet" (described in Paragraph 36 above) shall be completed by August 15, 2019;

iii.      The installation of the modular classrooms, including the completion of the passenger parking and loading zones, shall be completed as it relates to the District's obligations under this Consent Decree by August 23, 2019, but a certificate of occupancy may not be issued until September 2, 2019

19

at the latest, with grading and curb cuts in a state sufficient for inspection for wheelchair accessibility by August 15, 2019;

        iv.     The workstation(s) (described in Paragraph 18 above) shall be obtained and on-site by July 1, 2019;

        v.     The wheelchair lift in the hall near the gymnasium (described in Paragraph 31 above) shall be installed by July 1, 2019;

        vi.     The door handles for rooms that will be used by S.F. in an upcoming school year will be installed by the August 1 preceding that school year; and

        vii.     Modifications to existing bathrooms (described in Paragraph 36, and depicted on attached diagram) shall be completed by July 15, 2019, but this subsection shall only apply to the existing bathrooms, as the new bathrooms (being the "proposed ADA toilet," the toilet rooms being installed with the modular space, and the toilet in the new locker room) are subject to different deadlines above.

        c.     Plaintiff and his representatives shall be entitled to inspect the modifications.  As it relates to all inspections permitted under this Consent Decree, Plaintiff shall notify Defendant of the date and time of each inspection, but, Plaintiff will reasonably cooperate with Defendant to avoid any genuine scheduling difficulties. In the event of a dispute regarding the date or time of the inspection, Plaintiff's selection shall govern.   All inspections of modifications completed by the District by September 2, 2019 shall be inspected by October 1, 2019.  Unless expressly otherwise provided in this Consent Decree, Plaintiff shall

have the right to seek immediate relief for any violations of the Consent Decree. Defendant shall not at any time take the position that any steps required to be taken to correct violations of the Consent Decree cannot, will not, or should not be completed prior to the start of the 2019-20 school year, if noted before the start of the 2019-20 school year, or immediately, if noted thereafter.  Plaintiff shall have the right to inspect any subsequent modifications and/or to request documents that confirm compliance with any agreement or order to make modifications, to the extent such documents exist.

        d.     Even though the modular space and new entry vestibule will not be ready for occupancy until September 2, 2019, they will be in a condition sufficient for Plaintiff to inspect for compliance with the Consent Decree by August 15, 2019.  By August 15, 2019, Defendant shall provide to Plaintiff a list of items that need to be completed to fully comply with this Consent Decree as pertains to the modular space and new entry vestibule with sufficient detail for Plaintiff to evaluate for compliance with this Consent Decree (the "Accessibility Punch List").  Plaintiff's inspection of portions of the modular space and new entry vestibule for accessibility shall be completed by August 23, 2019. Defendant shall provide Plaintiff with (i) access to inspect items required for compliance with this Consent Decree, but not yet installed or completed (such as, by way of one example, a railing on an existing ramp), and (ii) information, as requested by Plaintiff, to confirm plans for compliant installation and/or completion.  Plaintiff shall be permitted to add items to the Accessibility Punch List based on his evaluation of the modular space for compliance with the

Consent Decree.  Unless the Court rules otherwise before the deadline for completion, items that are listed on the Accessibility Punch List, will be completed by August 31, 2019 or 48 hours before the scheduled start of school, whichever is sooner, or if items are added to the list after that, they will be completed immediately.  Defendant shall provide, by August 31, 2019, or 48 hours before the scheduled start of school, whichever is sooner, documentary proof, by way of photograph or other document sufficient to prove its compliance, that the items listed on the Accessibility Punch List have been completed.  If needed to confirm compliance, Plaintiff will have the opportunity to inspect after all work to make the modular space compliant with this Consent Decree once it is completed.   If the parties disagree as to the necessity of completing any item on the Accessibility Punch List so as to bring the modular space into compliance with the Consent Decree, the parties shall have the immediate right to have the Court resolve that dispute.

   e.  In addition to all of the provisions of parts (a)-(d) above and part (f) below, Defendant agrees to notify Plaintiff within seven days of the completion of each individual modification to the Main Building, irrespective of whether any of the deadlines for completion have been reached.  Upon being notified of the completion of any individual modification, Plaintiff shall have the right to inspect that modification on a mutually convenient date.  The failure of Plaintiff to exercise his right to inspect an individual modification that is completed prior to any of the above deadlines set forth in parts (a) and (b) shall not be deemed a waiver of Plaintiff's right to conduct the inspections provided for

in part (c) by the dates set forth in part (c), nor shall it be deemed a waiver of Plaintiff's right to notify Defendant of alleged non-compliance with this Consent Decree under the terms set forth in part (c).

        f.     In addition to all of the provisions of parts (a)-(e) above, Defendant agrees that, starting on June 15, 2019, and every two weeks thereafter until the completion of all of the construction/modifications required by this Consent Decree (with the sole exception of the construction of the New Middle School), Defendant will provide reports to Plaintiff that summarize the progress of construction to date. Plaintiff is also entitled to inspect the progress of construction. To the extent reasonable, Defendant shall provide Plaintiff with photographs, measurements and other information, as requested, to facilitate evaluation of compliance with this Consent Decree. Plaintiff shall not be deemed to have waived any of its rights that otherwise exist under this Consent Decree by not engaging in such periodic inspections of construction provided for in this part (f).

      38.    **2010 ADA Standards**: Unless otherwise provided herein, Defendant agrees that all modifications and alterations to the existing portion of the Main Building will be completed in compliance with the 2010 ADA Standards except to the extent that a particular requirement of the 2010 Standards does not impact accessibility to individuals who use wheelchairs (such as braille signage).

      39.    **Maintenance of accessibility features**: Defendant shall maintain the existing wheelchair accessibility features of Sandy Run in all areas used by students, including, but not limited to, path of travel. Defendant shall not take any

23

steps that will result in the creation of physical barriers to wheelchair accessibility or allow physical barriers to wheelchair accessibility to be created at Sandy Run in any area used by students.  Defendant will also maintain the New Middle School in compliance with this Consent Decree and the 2010 ADA Standards. The terms of this Paragraph shall not prevent Defendant from closing portions of Sandy Run to all students for construction or other appropriate purposes or from making any of the specific modifications otherwise specified by this Consent Decree, provided that in so doing, the District does not create barriers to wheelchair accessibility to portions of the building that remain open for student use (such as, for example, closing access to the elevator corridor to all students, which would create a barrier to wheelchair accessibility to those parts of other floors of Sandy Run that remain open to student use).

40.    **Claims outside of the Consent Decree**:  To the extent Plaintiff has concerns about wheelchair accessibility issues or other issues or facilities not governed by this Consent Decree, Plaintiff must raise them by separate (but potentially related) litigation, administrative proceeding or other means.  Nothing in this Consent Decree shall preclude Plaintiff from pursuing these claims, including, but not limited to, those cognizable under the Individuals With Disabilities Education Act, the Americans With Disabilities Act and/or the Rehabilitation Act of 1973.

41.    **Attorneys' fees, litigation expense and costs**:

a.    Within 30 days of the Effective Date, Defendant will pay to Plaintiff's counsel, Disability Rights Pennsylvania, the sum of $165,312.16 for

attorneys' fees and $12,766.69 for litigation expenses and costs incurred through execution of this Consent Decree.

        b.     Plaintiff shall retain the right to seek reimbursement from Defendant for attorneys' fees, litigation expenses and costs, including expert costs, incurred in this matter following the execution of the Consent Decree. Defendant retains the right to challenge the reasonableness of Plaintiff's request for attorneys' fees, litigation expenses and costs, but not the reasonableness of Plaintiff's attorneys' rates (provided these rates remain substantially similar to those presently disclosed by Plaintiff) and not Plaintiff's legal entitlement to reasonable attorneys' fees, litigation expenses and costs. Plaintiff's undertaking of multiple inspections as provided in this Consent Decree, even within short time periods from one another, shall not, in and of itself, be a basis for Defendant's challenge to the reasonableness of Plaintiff's attorneys' fees, litigation expenses and costs.

        c.     For attorneys' fees, litigation expenses and costs incurred after the Effective Date of this Consent Decree, Plaintiff shall have the right, but shall not be required, to submit periodic requests for payment to the District not more frequently than monthly.  Any dispute as to payment of the requested attorneys' fees, litigation expenses and costs may be submitted Judge Hey for resolution.

        42.     **Diagram**.  The attached diagram is being provided only for the purposes expressly stated in this Consent Decree.  Plaintiff does not, for

example, agree that the parking designated as accessible meets the 2010 ADA

Standards or the requirements of this Consent Decree.

43.     **Notice**:  Where notice or information is required to be provided, it

shall be provided to the individuals listed below, except where this Consent

Decree explicitly provides for notice to a different individual (such as in the case

of the elevator being out of service):

| | |
|---|---|
| To Plaintiff: | Disability Rights PA<br>Attn: Shanon S. Levin, Esquire<br>1315 Walnut Street, Suite 500<br>Philadelphia, PA 19107<br>slevin@disabilityrightspa.org |
| To Defendant: | Benjamin A. Andersen, Esquire<br>Brian R. Elias, Esquire<br>Wisler Pearlstine, LLP<br>460 Norristown Road, Suite 110<br>Blue Bell, PA 19422<br>bandersen@wispearl.com<br>belias@wispearl.com |

44.     **Construction of this Consent Decree**:

a.      No party is deemed the drafter of this Consent Decree.

b.      This Consent Decree is not to be construed as

acknowledgement by Plaintiff or on his behalf that any portion of Sandy Run or

the New Middle School is safe, compliant with the law, or usable by S.F.

c.      The fact that Defendant has entered into this Consent

Decree shall not be construed as an admission that Plaintiff would have been

granted any particular relief from the Court following a trial of this matter.

45.   **Court approval**:

a.     This Consent Decree is subject to the Court's agreement to approve it, incorporate it by reference in an order, and retain continuing jurisdiction to enforce it.  If the Court declines to do so, the Consent Decree will be null and void, and Plaintiff's claims will continue as if the Consent Decree were not executed.

b.     Within 10 days of the execution of the Consent Decree, the parties will submit a mutually agreeable proposed Order that: (i) approves the Consent Decree; (ii) dismisses Plaintiff's claims and incorporates the Consent Decree by reference in the Order; and (iii) provides that the Court will retain continuing jurisdiction to enforce the Consent Decree.

46.   **Jurisdiction**:  The parties agree that the United States District Court for the Eastern District of Pennsylvania shall retain jurisdiction to interpret and enforce any and all terms of this Consent Decree, including any request for a finding of contempt and the imposition of fines.  The parties agree that Honorable Elizabeth Hey shall have jurisdiction to resolve any such request for a finding of contempt, imposition of fines, or other application to interpret or enforce this Consent Decree. The parties further agree that Plaintiff may request intervention by the Court before there is a violation of the Consent Decree to the extent Plaintiff believes that the District is not making progress sufficient to complete its obligations on time and that Judge Hey may enter any Order appropriate to ensure timely compliance.  Judge Hey's decision under this Paragraph shall be

treated as the decision by the trial court.  In the event Judge Hey is not available, the parties will request assignment to another Magistrate Judge.

47.    **Termination**:  This Consent Decree will terminate upon S.F.'s completion of middle school or when the responsibility of the School District of Upper Dublin to provide him with a middle school education terminates, whichever occurs first, provided that there is no pending motion to enforce the terms of the Consent Decree or petition for attorneys' fees, litigation expense and costs.  If there is a pending motion, this Consent Decree will terminate when the motion and any ancillary motion relating to attorneys' fees, litigation expenses, and costs are fully resolved.

48.    **Miscellaneous**:

a.     The parties each acknowledge that no promise or inducement that is not herein expressed has been made.  The Consent Decree contains the sole and entire agreement between the parties.

b.     By signing below, the signatory for the Defendant represents and warrants that s/he has full authority to bind Defendant in this matter with respect to all terms contained in this Consent Decree.

c.     This Consent Decree shall be binding upon any and all of the parties' heirs, executors, administrators, successors or assigns.

d.     The parties agree that the Effective Date of this Consent Decree shall be the latest date on which it is executed by a party; provided that Defendant must execute this Consent Decree no later than five days after Plaintiff has executed it or Board approval, whichever is later.

e.     This Consent Decree constitutes the parties' sole and entire agreement and supersedes any prior written agreement or oral understandings or agreements.

f.     This Consent Decree shall not be altered, amended, changed or modified except in writing, executed by the parties.

g.     This Consent Decree may be executed in counterparts.

h.     Headings and captions used in this Consent Decree are for reference purposes only and shall not have any effect on the interpretation of the agreement.

Agreed to and acknowledged as follows:

S.F.

REDACTED                                    Dated:  9/18/18

REDACTED                                    Dated:  9/18/18
By his parents, K.F. and E.I.


SCHOOL DISTRICT OF UPPER DUBLIN


_____            Dated:  _____
By:  Dr. Steven Yanni, Superintendent

29

   e.  This Consent Decree constitutes the parties' sole and entire agreement and supersedes any prior written agreement or oral understandings or agreements.

   f.  This Consent Decree shall not be altered, amended, changed or modified except in writing, executed by the parties.

   g.  This Consent Decree may be executed in counterparts.

   h.  Headings and captions used in this Consent Decree are for reference purposes only and shall not have any effect on the interpretation of the agreement.

   Agreed to and acknowledged as follows:

S.F.

_____   Dated:  _____

_____   Dated:  _____
By his parents, K.F. and E.I.


SCHOOL DISTRICT OF UPPER DUBLIN

_____   Dated:  9/17/18
By:  Dr. Steven Yanni, Superintendent

29

ORDERED AND APPROVED BY THE COURT:


*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

Dated:     9/20/18



UPPER DUBLIN SCHOOL DISTRICT
SANDY RUN MIDDLE SCHOOL
ADA REVIEW

SK-1